# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 16-1221

BOBBY R. GEORGE, APPELLANT,

V.

DAVID J. SHULKIN, M.D.,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued December 8, 2017                    Decided February 5, 2018)

*Kenneth M. Carpenter*, of Topeka, Kansas, for the appellant.

*Michael G. Imber*, with whom *Meghan Flanz*, Interim General Counsel; *Mary Ann Flynn*, Chief Counsel; and *Edward V. Cassidy, Jr.*, Deputy Chief Counsel, all of Washington, D.C., were on the brief for the appellee. *Jessica K. Grunberg*, of Washington, D.C., argued before the Court.

Before SCHOELEN, GREENBERG, and ALLEN, *Judges*;

ALLEN, *Judge*, filed the opinion of the Court. GREENBERG, *Judge*, filed a dissenting opinion.

ALLEN, *Judge*: This appeal calls on the Court to address two independently challenging areas of the law: the application of 38 C.F.R. § 3.156(c) and motions to revise final decisions based on clear and unmistakable error (CUE) under 38 U.S.C. § 7111. As we explain, our resolution of the claimed error here under § 3.156(c) is largely dictated by the fact that we consider that matter through the prism of CUE.

The appellant, Bobby R. George, appeals through counsel a December 15, 2015, Board of Veterans' Appeals (Board) decision (the "2015 decision") that found no CUE in a September 2014 Board decision (the "2014 decision") concerning his claims for post-traumatic stress disorder (PTSD). Record (R.) at 2–12. The matter was referred to a panel of the Court, with oral argument, to decide whether the Board properly applied § 3.156(c) when it determined that no CUE was present in the 2014 decision. We will affirm the 2015 decision on appeal.

# I.   RELEVANT FACTS AND PROCEDURAL HISTORY

The appellant served honorably in the United States Army from August 1967 to August 1969, including active duty service in Vietnam. R. at 971. In September 1997, he filed a claim for service connection for PTSD. R. at 1105. The Muskogee, Oklahoma, regional office (RO) denied his claim in February 1998, finding no confirmed diagnosis of PTSD and no in-service stressor. R. at 1087. The appellant did not appeal this decision and it became final.

In September 2003, the appellant sought to reopen his claim for service connection for PTSD. R. at 969. In January 2004, the RO reopened the appellant's claim but confirmed its previous denial of service connection for PTSD. R. at 942. The appellant appealed the denial in June 2004. *See* R. at 802. The Board confirmed the RO's reopening of the claim in December 2005 and remanded the claim for further development. R. at 795-97. After a series of remands, VA obtained additional records related to the appellant's Vietnam service, which confirmed his claimed in-service stressor. R. at 703–08.

Following a VA examination that diagnosed the appellant with PTSD, the RO granted service connection in October 2007, assigning an effective date of September 19, 2003—the date the appellant requested that VA reopen his claim. R. at 683, 696. In doing so, the RO stated:

> You have reported stressful incidents of sustaining mortar and rocket attacks while stationed in Vietnam. Report from U.S. Army and Joint Services Record Research Center received 07-06-07 shows verification of rocket attacks in Lai Khe. Excerpt from Vietnam Order of Battle Book indicates the 1st Infantry Division HQ, your division, was stationed at Lai Khe during the time of verified attacks. This information is considered credible evidence which provides corroboration of your reported stressor. VA examination dated 08-03-07 shows a current diagnosis of [PTSD] related to the stressful incidents experienced during military service in Vietnam. Therefore, service connection for [PTSD] is warranted.

R. at 684.

In response, the appellant filed a Notice of Disagreement in July 2008 as to the assigned effective date, arguing that, under § 3.156(c), reconsideration of the February 1998 denial was required. In May 2011, the Board denied an earlier effective date and the appellant appealed to this Court. In August 2012, the Court granted a joint motion for partial remand (JMPR) requiring the Board to consider the applicability of § 3.156(c) since it had erroneously held that the provisions did not apply. In February 2013, the Board remanded the claim to the RO to obtain a retrospective medical opinion as to when the appellant's PTSD first manifested. The April 2013 retrospective opinion noted that (1) the appellant began struggling with depression in 2003, and (2) the violence

and alcohol abuse prior to 2003 reported in the appellant's lay testimony could not be attributed to PTSD.[1] R. at 197. Thus, when asked for an opinion as to the onset of PTSD, the examiner's response pointed to the October 2003 diagnosis. R. at 197.

In September 2014, the Board denied the appellant's claim for an effective date earlier than September 2003 for service connection for PTSD. R. at 84. It noted that the date of claim could relate back to September 30, 1997, the date he filed the initial claim; however, because the April 2013 retrospective medical opinion found PTSD did not manifest until October 2003, the Board denied an effective date earlier than September 19, 2003. R. at 71-74. The appellant did not appeal the 2014 decision and it became final. In August 2015, the appellant filed a motion to revise the 2014 decision based on CUE. R. at 26-31.

In the 2015 decision on appeal, the Board determined that the 2014 decision did not contain CUE because the Board did not incorrectly apply § 3.156(c). The Board found that "[w]hile the Board did not use the exact terms as delineated in 38 C.F.R. § 3.156(c), it essentially found that the medical evidence did not adequately support a finding that [appellant's] PTSD had its onset prior to 2003." R. at 11. Thus, the Board concluded that revision of the 2014 decision based on CUE was not warranted. *Id.* This appeal followed.

## II.     THE LEGAL LANDSCAPE AND THE PARTIES' ARGUMENTS

### A. The Legal Landscape

This appeal concerns the intersection of two areas of the law. Before addressing the substance, we will briefly set the legal stage. We will return to these principles in more detail below when considering the merits of the appellant's claim.

As a general matter, when the Board renders a decision that is not appealed to the Court within the statutory period, that decision becomes final. 38 U.S.C. §§ 7252, 7266(a)(1)("In order to obtain review by the [CAVC] of a final decision of the [Board], a person adversely affected by

---

[1] The examiner's exact statement was that "[i]t would be resorting to speculation to conclude that [appellant's] alcohol and violence history [prior to 2003] were due to PTSD." R. at 197. Because a nexus opinion must be "non-speculative," *see McLendon v. Nicholson*, 20 Vet.App. 79, 85 (2006), this evidence cannot substantiate the onset of PTSD prior to 2003. The Court has previously admonished the Board for relying on reports that say a positive nexus opinion would require speculation, rather than obtaining a "nonspeculative determination of the degree of likelihood," i.e., more or less likely than not. *See Jones v. Shinseki*, 23 Vet.App. 382, 388 (2010). We have held that such an opinion must be accompanied by a thorough statement of the weighing of facts leading up to it. *Id*. at 393. Nevertheless, because this appeal concerns a CUE motion, the adequacy of the medical examination and the Secretary's satisfaction of the duty to assist are not before us as they would be on a direct appeal.

such decision shall file [an NOA] with the Court within 120 days."). A claimant may otherwise reopen such a final decision by submitting new and material evidence. 38 C.F.R. § 3.156(a). The effective date for an award on a claim reopened on this basis is usually the date of receipt of the request to reopen or the date entitlement arose, whichever is later. 38 U.S.C. § 5110(a); 38 C.F.R. § 3.400(b)(ii)(B)(2)(i), (r) (2017).[2] However, § 3.156(c) provides an exception to these rules. Subsection (c)(1) states, in relevant part:

> at any time after VA issues a decision on a claim, if VA receives or associates with the claims file relevant official service department records that existed and had not been associated with the claims file when VA first decided the claim, VA will reconsider the claim, not withstanding paragraph (a) of this section.

38 C.F.R. § 3.156(c)(1) (2017). Subsection (c)(3) in turn states that, should an award be granted because of records obtained via subsection (c)(1), the award "is effective on the date entitlement arose or the date VA received the previously decided claim, whichever is later." 38 C.F.R. § 3.156(c)(iii)(3).

The purpose of subsection (c) is "to place a veteran in the position he [or she] would have been had . . . VA considered the relevant service department record before the disposition of [the] earlier claim." *Blubaugh v. McDonald*, 773 F.3d 1310, 1313 (Fed. Cir. 2014); New and Material Evidence, 70 Fed.Reg. 35,388, 35,389 (June 20, 2005) (proposed rule) (stating that revised § 3.156(c) will "allow VA to reconsider decisions and retroactively evaluate disability in a fair manner, on the basis that a claimant should not be harmed by an administrative deficiency of the government"); *see also Pacheco v. Gibson*, 27 Vet.App. 21, 32–33 (2014) (en banc) (Pietsch, J., concurring) (noting that subsection (c) "is an exception to finality"). As we discuss below, there is, however, precious little caselaw articulating precisely what the reconsideration mandated under § 3.156(c)(1) requires.

There are other means by which the finality of a decision may be vitiated. Relevant to this appeal, for example, the finality of a Board decision may be overcome if that decision contains CUE. 38 U.S.C. §§ 5109A(a), 7111(a); *see DiCarlo v. Nicholson*, 20 Vet.App. 52, 56 (2006); 38 C.F.R. §§ 3.105(a) (2017), 20.1400–1411 (2017). "[CUE] is a very specific and rare kind of

---

[2] If new and material evidence is received by VA adjudicators within the time to appeal a decision, such evidence must be added to the evidence of record at the time of such decision and the claim must be reconsidered on the totality of the original evidence and the new and material evidence received within the appeal period. 38 C.F.R. § 3.156(b). Section 3.156(b) is not relevant to this appeal because new and material evidence was not received by VA within the time to appeal the initial decision.

error . . . that when called to the attention of later reviewers compels the conclusion, to which reasonable minds could not differ, that the result would have been manifestly different but for the error." 38 C.F.R. § 20.1403(a) (2017). To establish CUE, a claimant must show that: (1) either the facts known at the time were not before the adjudicator or the law then in effect was incorrectly applied, (2) an error occurred based on the record and the law that existed at the time the decision was made, and (3) had the error not been made, the outcome would have been manifestly different. *Grover v. West*, 12 Vet.App. 109, 112 (1999); *see also Damrel v. Brown*, 6 Vet.App. 242, 245 (1994); *Russell v. Principi*, 3 Vet.App. 310, 313–14 (1992) (en banc) (a determination that there was CUE in a final agency decision "must be based on the record and the law that existed at the time of the prior" Board decision). Underscoring the high bar for establishing CUE, we have held that an error is "undebatable" when "reasonable minds could only conclude that the original decision was fatally flawed at the time it was made." *Andrews v. Principi*, 18 Vet.App. 177, 181 (2004) (quoting *Russell*, 3 Vet.App. at 313–14).

As we alluded to above, this appeal requires us to consider whether the 2015 Board decision contains error in its finding that the 2014 Board decision did not contain CUE. Before turning to that endeavor, we summarize the parties' respective positions on the matters on appeal.

### B. The Parties' Arguments

The appellant argues that the Board erred in the decision on appeal when it determined that the 2014 decision did not contain CUE. He contends that, in the 2014 decision, the Board did not "reconsider" his PTSD claim with the new service department records under § 3.156(c)(1), but, instead, only reviewed the proper effective date under subsection (c)(3). According to the appellant, the "finality of the VA's original [(1997)] denial has been undone" by the receipt of new service treatment records and, because the RO never engaged in a full readjudication, the Board erred when it found no CUE. Appellant's Brief (Br.) at 13. He further contends that VA's action, which he referred to at oral argument as a partial readjudication on the issue of effective date only, did not put him in the position he would have been in had the relevant service department records been considered as part of his original (1997) claim. Specifically, he suggests that a full readjudication would have triggered the duty to assist by developing his lay testimony of certain in-service symptoms and decide whether they showed a manifestation of PTSD prior to 2003. Appellant's Br. at 1–13.

The Secretary argues in response that the Board did indeed reconsider the appellant's claim, as shown by its obtaining a retrospective medical opinion on the exact date of onset of his PTSD. He also replies that, even if the Board's analysis in the 2014 decision under § 3.156(c) was incorrect, the appellant only points to the *possibility* that this evidence would have led to entitlement to service connection in 1997, not to an undisputed, outcome-determinative error needed to satisfy the demanding CUE standard. Secretary's Br. at 13–15.

### III. ANALYSIS

#### A. The Operation of 38 C.F.R. § 3.156

We begin by analyzing the 2015 decision to determine whether it reflects a correct understanding of the operation of § 3.156(c). Whether the Board applied the correct legal standard as set forth in § 3.156(c) is a question of law the Court reviews de novo. *See* 38 U.S.C. § 7261(a)(1); *Butts v. Brown*, 5 Vet.App. 532, 539 (1993) (en banc) (noting the Court's "longstanding practice of reviewing questions of law de novo without any deference to the [Board's] conclusion of law"). In other words, even though (as described below) our review of the Board's ultimate finding of no CUE is deferential, if the Board made its CUE determination using an incorrect legal standard, it cannot stand. The appellant argues that the Board in its 2015 decision misunderstood the relevant law because, in sum, the Board only considered whether there was an error as to effective date as opposed to the adjudication of the claim itself upon reconsideration. We do not agree.

It is clear to us that the Board applied the basic legal principles of § 3.156(c) to assess the appellant's assertion that the 2014 decision contained CUE. Specifically, the Board explained that this section has sub-parts concerning both what VA must do substantively when it receives new service department records—reconsider the claim—as well as the potential effect of receiving such records on the appropriate effective date. R. at 5-6. We will briefly summarize the existing law in this area, sparse as it may be, which provides a useful lens through which to assess what the Board did in the decision on appeal.

In *Blubaugh*, the United States Court of Appeals for the Federal Circuit (Federal Circuit) underscored that § 3.156(c) "serves to place a veteran in the position he would have been had the VA considered the relevant service department record before the disposition of his earlier claim." 773 F.3d at 1313. The Federal Circuit noted that subsection (c)(1) "is a separate and distinct

provision from subsections (c)(3) and (c)(4)" and that "[t]he language and overall structure of § 3.156(c)(1) strongly suggest that § 3.156(c)(1) requires the VA to reconsider only the merits of a veteran's claim" when service records are associated with the claims file, before considering whether an earlier effective date is warranted under subsections (c)(3) and (c)(4). *Id.* at 1314.

This Court has described the operation of § 3.156(c) in a similar way. In *Vigil v. Peake*, an appeal also concerning PTSD, the Court noted that, when service department records are received subsequent to the denial of a claim,

> the claimant is entitled to a retroactive evaluation of the disability to assess the proper effective date which would be the date of the original claim or the date entitlement otherwise arose, whichever is later. In this sense, the original claim is not just reopened, it is reconsidered and serves as the date of the claim and the earliest date for which benefits may be granted.

22 Vet.App. 63, 66–67 (2008).

What is less clear under existing law is precisely what constitutes "reconsideration" pursuant to § 3.156(c)(1). *Vigil*, perhaps, offers the best guidance on that point too; we held that "reconsideration" requires "the development of evidence regarding when Mr. Vigil first suffered PTSD. . . ." *Id*. at 67. Thus, we know without question that § 3.156(c) is about more than effective date; it's also about development of the claim in at least some respect.

How does this apply to the present appeal? Under *Blubaugh* and *Vigil*, upon receiving official service department records in 2007, VA had a duty to "reconsider" the appellant's 1997 claim for service connection for PTSD, despite the fact that service connection for PTSD was granted in 2007 with an effective date of 2003. Thus, VA was required to reassess its 1998 decision in light of the new service records. Exactly what would satisfy the reconsideration required is a gray area under existing law. Our task at this point in the analysis is to decide whether the Board in the 2015 decision used the principles we have articulated to assess whether CUE was present in the 2014 decision based on those standards. If it did not, the decision on appeal must be set aside. If it did, then we would turn to whether the Board's ultimate conclusion was correct.

The Court holds that the Board in the 2015 decision applied the correct legal principles under § 3.156(c) when it reviewed the 2014 decision. The Board specifically explained that, given the receipt of service department records not previously associated with the claim, § 3.156(c) was applicable and reconsideration was needed. R. at 5. That decision also notes that the earliest entitlement to benefits would be based on the original 1997 claim. R. at 7. The appellant argues that, when discussing the effective date, the Board skipped past § 3.156(c)(1), which demands

reconsideration of the original claim, and went straight to § 3.156 (c)(3), which deals with the effective date of a claim granted via reconsideration. If the Board had acted as the appellant suggests, it would indicate that it did not understand the relevant legal framework. However, the evidence of record shows otherwise. For example, and as discussed in detail in the next section, the Board addressed at length the various steps taken after receipt of the service department records, such as obtaining a retrospective medical examination and considering other evidence such as Social Security records and lay statements. R. at 7–8. This type of discussion only makes sense in the context of reconsidering a claim.

Similarly, after acknowledging that § 3.156(c) applied, the Board explicitly stated in its 2015 decision that "it was necessary for the Board [in 2014] to determine when [the appellant's] entitlement to service connection for PTSD arose." R. at 7. This statement evidences the Board's finding that a reconsideration occurred. If, in 2014, the Board was not reconsidering the claim pursuant to § 3.156(c)(1), then it had no need to reexamine the onset of PTSD, which had already been established. Moreover, this type of action is in accord with what the Court appeared to suggest in *Vigil*. *See* 22 Vet.App. at 66–67 (discussing among other things a claimant being entitled to a "retroactive evaluation of the disability" and "the development of evidence regarding" the initial onset of the disability at issue).

Therefore, the evidence, taken as a whole, shows that the Board properly considered the provisions of § 3.156(c) when assessing the 2014 decision. *See Janssen v. Principi*, 15 Vet.App. 370, 379 (2001) (per curiam) (holding that a Board decision must be read "as a whole"). Having determined on a de novo basis that the Board in its 2015 decision used the correct legal standards, we turn next to whether the Board made a correct finding in its ultimate decision that no CUE is present in the 2014 decision.

B. The Board's Finding That The 2014 Decision Did Not Contain CUE

The 2015 decision concluded that the 2014 decision did not contain CUE in its application of § 3.156, particularly with respect to the reconsideration requirement under subsection (c)(1). R. at 11. Unlike our assessment of whether the Board used the correct legal standards in its analysis, the Court's review of a Board decision regarding whether CUE exists in a prior decision is limited to whether the Board's decision on that question was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 38 U.S.C. § 7261(a)(3)(A). The scope of review under the "arbitrary and capricious" standard is quite narrow and the Court is not to substitute its

judgment for that of the agency. *Russell*, 3 Vet.App. at 315. In other words, the Court shall not "conduct a plenary review of the merits of the original decision." *Stallworth v. Nicholson*, 20 Vet.App. 482, 487 (2006). So long as the Board articulates a satisfactory explanation for its decision, "including a rational connection between the facts found and the choice made," the Court must affirm. *Lane v. Principi*, 16 Vet.App. 78, 83 (2002).

The development done by VA throughout this appeal supports the Board's finding that reconsideration under § 3.156(c)(1) occurred in the 2014 decision. Specifically, the RO readjudicated the claim in October 2007 and granted service connection, based in part on the newly received service records. Additionally, in April 2013, VA obtained a retrospective medical opinion to determine when the appellant first suffered from PTSD. This medical opinion was apparently a part of VA's efforts to develop the claim, further supporting the notion that reconsideration of the merits was taking place. In the 2014 decision, the Board specifically noted that the date of claim was September 30, 1997, based on § 3.156(c), but found that entitlement did not arise prior to September 19, 2003, when PTSD first had its onset. R. at 71.

In the 2015 decision, the Board addressed this development of evidence in terms of its determination that the appellant's claim was appropriately reconsidered, at least to the extent one could assess that issue in the context of a CUE motion. The Board noted that, "[w]hile the [2014] Board did not use the exact terms as delineated in 38 C.F.R. § 3.156(c), it essentially found that the medical evidence did not adequately support a finding that [the appellant's] PTSD had its onset prior to 2003." R. at 11. The Board, upon reconsideration of the new service department records pursuant to § 3.156(c)(1), found that there is no evidence indicating an earlier onset of PTSD and therefore denied entitlement to an earlier effective date. Such a determination provides the foundation for the Board's assessment that a reconsideration of the claim consistent with § 3.156(c)(1) occurred, even if the Court might have reached another decision itself or if the matter were before us on direct review.

At the end of the day, the Court understands that there is uncertainty about the precise contours of a "reconsideration" in the context of § 3.156(c)(1). The CUE framework does not allow us to address that question here, at least directly. We may only ask whether the Board's conclusion that reconsideration had occurred in the 2014 decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." All we can say today is that, given the imprecise definition of "reconsider" under § 3.156(c)(1), the Board's determination that a proper

reconsideration occurred based on the gathering of new evidence and the reweighing of old evidence, is not arbitrary or capricious under the deferential CUE standard.[3]

## IV.    CONCLUSION

After consideration of the parties' briefs and oral arguments, the record on appeal, and the governing law, the Board's December 15, 2015, decision is AFFIRMED.

GREENBERG, *Judge*, dissenting: I dissent simply because the factual circumstances of this case warrant a more equitable result. The appellant was originally denied service connection based on an examiner's opinion that the appellant did not have a specific event to attach a diagnosis of PTSD. However, relevant records in the Government's possession were not associated with the claims file at the time of that examination. I believe that the examiner's opinion would have been different if he had reviewed the records that eventually led to the grant of service connection. For this reason, I dissent.

---

[3] The appellant makes a facially credible argument that, had the Board conducted a "full readjudication" in 2014, his lay statements may have triggered the duty to assist, which, in turn, could lead to the development of evidence of PTSD symptoms prior to 2003. On direct appeal, the appellant would have had the opportunity to argue that the Secretary did not satisfy his duty to assist, but that time has come and gone. This Court has long understood that a failure of the duty to assist cannot constitute CUE. *Cook v. Principi*, 318 F.3d 1334, 1341 (Fed. Cir. 2002) ("a breach of the duty to assist . . . [does not] vitiate the finality of an RO decision").